DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Shawnee Perdue, Esq. (ISB No. 8888)
sperdue@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KERRI NEMIRE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>JUNIPER HILLS COUNTRY CLUB, INC.,<br><br>　　　　　　Defendant. | Case No. _____<br><br>**COMPLAINT AND DEMAND**<br>**FOR JURY TRIAL**<br><br>Filing Fee: $402.00 |

COMES NOW Plaintiff, Kerri Nemire, by and through her counsel of record, Casperson Ulrich Dustin PLLC, and for cause of action against Defendant Juniper Hills Country Club, Inc., alleges and complains as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district. Venue also properly lies in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

1 – COMPLAINT AND DEMAND FOR JURY TRIAL

## PARTIES

4.    Plaintiff Kerri Nemire ("Plaintiff") is a female citizen and resident of the United States of America, who resides in Bannock County, Idaho.

5.    Defendant Juniper Hills Country Club, Inc. ("Defendant" or "Juniper Hills") is an Idaho corporation, doing business in Bannock County, Idaho.

6.    At all times relevant to this Complaint, Defendant regularly employed fifteen or more people whose services were performed in the State of Idaho and was engaged in an industry affecting commerce.  Consequently, Defendant's conduct is properly regulated by Idaho Code § 67-5901, *et seq.*; and 42 U.S.C. § 2000, *et seq.*

## FACTS COMMON TO ALL COUNTS

7.    Plaintiff realleges and incorporates by reference paragraphs 1 through 6 as though fully set forth herein.

8.    In or around March 2016, Plaintiff began working for Defendant as bar manager.

9.    From the beginning of Plaintiff's employment with Defendant, Defendant's General Manager, Ron Malooly ("Malooly") began making inappropriate sexual comments toward Plaintiff.

10.    Plaintiff was required to meet with Malooly in the back office which was devoid of cameras.

11.    Malooly would then trap Plaintiff in the office and insist she give him hugs.

12.    There were many times Malooly would intentionally brush up against Plaintiff's breasts.

13.    Malooly would comment frequently on Plaintiff's clothing and state that he thought she was "such a beautiful woman, for [her] age."

14. Malooly, in relation to a dress Plaintiff had worn to work, commented "I'd sure like to see that dress at the end of my bed."

15. Kevin Brown ("Brown"), the Office Manager, had reported to the Board sexual harassment and abusive conduct Malooly had perpetrated upon other employees, but the Board failed to act. Brown also witnessed Malooly pulling Plaintiff down onto his lap as he entered the room and addressed Malooly, telling him to "knock it off." The Board failed to act or investigate any claims made against Malooly. Unfortunately, Brown later left employment with Defendant.

16. Malooly was so obviously harassing Plaintiff that many of the employees would comment on how he favored Plaintiff and assumed they were in a relationship. Plaintiff adamantly denied the assertion each time it was posited.

17. Malooly's sexually harassing and discriminatory conduct was open and obvious. He would openly state that "I only hire pretty girls," and would tell graphic/distasteful stories about his sexual escapades in the workplace to female employees during work hours.

18. Malooly's behavior toward Nemire was unwanted, aggressive at times, unrelenting, and created a hostile work environment that Juniper Hills was aware of and failed to rectify.

19. Malooly heard that Plaintiff had been speaking out about the sexual harassment he was perpetrating upon her. Malooly once again cornered Plaintiff in his office, except this time he threatened her with allegations of theft if she went to the Board with the sexual harassment accusations.

20. Malooly stated he would accuse Plaintiff of stealing a $20 payment from the till. He indicated to her that he had video evidence of the theft occurring. Plaintiff denied any theft and demanded that he show her the video of the theft. Malooly refused, at which point

3 – COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff stated that the allegations were false and were only for the purpose of stopping her from reporting him to the Board for sexual harassment and to continue to tolerate his offensive behavior.

21. Malooly placed Plaintiff on unpaid leave immediately and told her to return to work on the following Monday.

22. On or about August 26, 2022, Plaintiff received a call from Malooly, stating that he and the president of the Juniper Hills Board, Kari Fowler ("Fowler") needed to speak with her.

23. Plaintiff met with Malooly and Fowler who stated her allegations against Malooly were strong, but they were concerned about the $20 she had been accused of stealing from the till. They still refused to show Plaintiff the video evidence they claimed they possessed.

24. Plaintiff asserted the accusation of theft was Malooly's threat against her for her statements to others that she had been sexually harassed by Malooly for years and should report him to the Board. Malooly's only comment was, "we are not talking about the right now." On or about August 26, 2022, Fowler and Malooly terminated Plaintiff's employment at Juniper Hills Country Club.

25. On or around May 30, 2023, Plaintiff dually filed a Charge of Discrimination with the Idaho Human Rights Commission and the Equal Employment Opportunity Commission.

26. Plaintiff's partner was a member at Juniper Hills Country Club. On or about July 20, 2023, Plaintiff's partner received a text message from a Juniper Hills Board member, informing him that Plaintiff was no longer welcome on the premises and could not participate in any club sponsored activities. This was in retaliation for Plaintiff filing a Charge of Discrimination with the IHRC/EEOC.

4 – COMPLAINT AND DEMAND FOR JURY TRIAL

27.     On or about August 10, 2023, Nemire filed an additional Charge of Discrimination to include the retaliatory act of excluding her from the premises.

28.     On or about February 13, 2024, Plaintiff was issued her Notice of Right to Sue.

29.     Plaintiff has exhausted her administrative remedies.

30.     Defendant's discrimination and harassment of and retaliation against Plaintiff have caused her significant emotional distress and financial hardship.

**COUNT ONE**
**VIOLATION OF TITLE VII/IDAHO HUMAN RIGHTS ACT**
**(Sexual Harassment/Hostile Work Environment)**

31.     Plaintiff realleges and incorporates by reference paragraphs 1 through 30 as though fully set forth herein.

32.     Plaintiff is a woman and therefore belongs to a protected class under Title VII of the Civil Rights Act and the Idaho Human Rights Act.

33.     Plaintiff was subjected to unwanted comments and touching while at work, including sexual comments, sexual advances, grabbing, and groping.

34.     Such conduct was unwelcome.

35.     Such conduct was based upon Plaintiff's sex.

36.     Such conduct was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment and create a sexually abusive and hostile work environment.

37.     Plaintiff perceived the work environment to be abusive, hostile, and/or offensive.

38.     A reasonable woman in Plaintiff's circumstances would consider the working environment to be abusive, hostile and/or offensive.

39.     Malooly's threat to report Plaintiff of theft if she reported him and/or did not continue to tolerate his offensive behavior was an express or implied threat of termination.

40. When Nemire refused to bow to Malooly's threat of reporting her for theft in order to keep her quiet and force her to continue tolerating his behavior, he made good on his threat and reported her alleged theft, which resulted in Nemire's termination.

41. Consequently, Plaintiff suffered a tangible employment action as a result of the hostile work environment.

42. As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities, as well as emotional distress consisting of outrage, shock, and humiliation. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

43. Defendant's conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

### COUNT TWO
### VIOLATION OF TITLE VII/IDAHO HUMAN RIGHTS ACT
**(Retaliation)**

44. Plaintiff realleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein.

45. Plaintiff engaged in a protected activity under Title VII and the Idaho Human Rights Act when she reported to others that she was tired of Malooly's offensive behavior and should report Malooly's sexual harassment and the hostile work environment in which she worked.

46. Plaintiff was subject to adverse employment actions as a result of her protected activity.

6 – COMPLAINT AND DEMAND FOR JURY TRIAL

47.    Defendant discriminated against Plaintiff and/or retaliated against Plaintiff due to her engaging in protected activity.

48.    Defendant further retaliated against Plaintiff by barring her from the premises after she filed a charge of discrimination with the IHRC/EEOC.

49.    As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities, as well as emotional distress consisting of outrage, shock, and humiliation. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

50.    Defendant's conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## ATTORNEYS' FEES

As a further and direct result of Defendant's actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel and has incurred, and will continue to incur, costs and attorneys' fees. Plaintiff is therefore entitled to attorneys' fees and costs incurred in pursuing this action pursuant to 42 U.S.C. § 1981(b), 42 U.S.C. § 2000e-5(k), and Idaho Code § 12-121.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Plaintiff seeks the judgment of the Court against Defendant as follows:

1.    For general and compensatory damages, and all other statutorily available damages, in an amount to be proven at trial;

2.      For any equitable remedies available to her;

3.      For punitive damages;

4.      For statutorily available costs and attorneys' fees;

5.      For prejudgment interest on all amounts claimed; and

6.      For such other and further relief as the Court deems just and proper.


DATED this 4th day of April, 2024.          /s/_____
                                            Shawnee Perdue, Esq.
                                            Casperson Ulrich Dustin PLLC